**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

|  |  |  |
|---|---|---|
| JAHMIN MUSE, | : |  |
|  | : | Civil Action No. 11-4068(SRC) |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| STEPHEN D'ILIO, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

**CHESLER**, District Judge:

This matter comes before the Court upon the Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (the "Amended Petition") filed by Petitioner Jahmin Muse ("Petitioner"), an inmate confined in New Jersey State Prison. (Am. Pet., ECF No. 7.) Petitioner was convicted and sentenced after a jury trial in the New Jersey Superior Court, Union County, for possession of cocaine, possession of cocaine with intent to distribute, possession of heroin, and possession of heroin with intent to distribute. (Id. at 1.) On February 26, 2007, the Appellate Division affirmed Petitioner's conviction and sentence. State v. Muse, 2007 WL 561426 (N.J. Super. Ct. App. Div. Feb. 26, 2007) ("Muse I"). The New

Jersey Supreme Court denied certification. State v. Muse, 192 N.J. 294 (2007).

Petitioner subsequently filed a Petition for post-conviction relief, which was also denied. (Am. Pet., ECF No. 1 at 3, ¶ 11). The Appellate Division affirmed the denial of post-conviction relief, and the New Jersey Supreme Court denied certification. State v. Muse, 2010 WL 2867966 (N.J. Super. App. Div. July 21, 2010)("Muse II"), certif. denied, 205 N.J. 78 (2011).

Petitioner filed his original habeas petition in this Court on July 15, 2011, and this Court granted Petitioner a stay while he returned to state court to file a second petition for post-conviction relief. (ECF Nos. 1, 5.) The denial of Petitioner's second petition for post-conviction relief became final when the New Jersey Supreme Court denied certification on March 27, 2015. (State v. Muse, A-003118-12, ECF No. 21-19.) Petitioner filed an amended habeas petition before this Court on April 30, 2015. (Am. Pet., ECF No. 7.) This matter is now before the Court for resolution of the Amended Petition.

I.   BACKGROUND

The New Jersey Superior Court Appellate Division summarized the factual background in this matter on Petitioner's direct appeal. Muse I, 2007 WL 561426. On January 30, 2005, in Elizabeth, New Jersey, undercover officers observed Petitioner approach a man standing outside a liquor store, cross the street and reach into

2

a Mercury Grand Marquis to obtain a concealed item, and hand the item to the man. Petitioner handed concealed items to several other men who approached him, and in at least one instance, the officers observed that the transaction was made in exchange for money.

The officers, with back-up, approached the liquor store and observed another similar transaction between Petitioner and co-defendant Graddy. Petitioner appeared to know one of the officers and said, "You got me, you got me. It is the last bag I have. That's all I got. That's all I got." Muse I, 2007 WL 561426, at *2. Petitioner was handcuffed and arrested. Graddy tried to slip away but Officer Bellomo stopped him and made him spit out a glassine envelope, marked "Self-Destruction, he had placed in his mouth.

Petitioner was searched and officers found four glassine envelopes marked "Self-Destruction" in Petitioner's long underwear, $203 in his left front pocket, and a set of house keys. The officers left the store and approached the Grand Marquis with Petitioner and Graddy. Petitioner yelled to Officer Mikros ("Mikros"), one of the undercover officers, that Petitioner would tell Mikros where his stash was, if Mikros agreed not to tie Petitioner to the Grand Marquis, which was his brother's car. Mikros read Petitioner his Miranda rights, while Petitioner continued to tell Mikros he would take Mikros to his stash.  Mikros

followed Petitioner's instructions and found the stash, a black plastic bag with forty-four vials of cocaine.

In the meantime, Officer Kelly ("Kelly") looked through the windows of the Grand Marquis and saw two gallon-sized Ziploc bags under the armrest, and a sleeve containing glassine envelopes.

Mikros took Petitioner and Graddy to police headquarters, and Petitioner said he wanted to give a statement. Petitioner was read his Miranda rights from a form on a computer. Petitioner expressed his desire to talk, but would not sign anything. Officer Kelly told Petitioner if he wanted to give a truthful statement, he had to sign it. Petitioner refused.

At first, Petitioner told Mikros there was nothing in the Grand Marquis, and requested that the vehicle be released to his brother. As Mikros was taking Petitioner to the cell block, Petitioner volunteered that there were 190 grams of cocaine in the car, and the car key was under the front passenger tire. Mikros relayed this information to Kelly, who used the information to obtain a search warrant for the car.

When Kelly returned to headquarters, he advised Petitioner of his Miranda rights, and Petitioner still wished to talk. Once in the interview room, Petitioner said he understood and would waive his rights, but reiterated that he would not sign anything. Petitioner told Kelly that he was meeting an individual from Plainfield and was going to sell the cocaine to him for $5,000.

4

While he was waiting for this individual, he saw some guys who sold drugs for him, and he passed out a couple of bundles of heroin from the sleeve inside the car.

After obtaining the search warrant and searching the vehicle, police recovered a blue Ziploc bag containing a white, rock-like, granular substance; a clear plastic Ziploc bag containing a white paper towel and a white, rock-like, granular substance; and eighty small glassine envelopes marked "Self-Destruction." One of the Ziploc bags contained cocaine, and the other Ziploc bag contained heroin.

Petitioner testified at trial, after being advised by the trial judge that his prior convictions might come into evidence. In his testimony, Petitioner blamed the criminal activity on an associate named "Kev" and his co-defendant, Graddy. Petitioner denied possession of the Grand Marquis by himself and his brother, and he denied making a confession to the police.

After Petitioner testified about his prior crimes on direct examination, the judge immediately gave a limiting instruction. Petitioner testified that he never touched any drugs, which led the judge to inform the prosecutor that "the door is open." On cross-examination, the prosecutor used Petitioner's prior convictions of drug possession to impeach Petitioner's claim that he never touched any drugs. The prosecutor then notified the judge that she would be going into the nature of Petitioner's other prior

convictions.  After a jury trial, Petitioner was convicted on all eight counts brought in the case.

On direct appeal, Petitioner challenged the jury instructions and the admission of evidence of his prior convictions. Muse I, 2007 WL 561426. The Appellate Division denied Petitioner's claims, but ordered remand for resentencing for an extended-term sentence under State v. Pierce, 188 N.J. 155, 162 (2006).

Petitioner sought post-conviction relief, alleging ineffective assistance of counsel. Muse II, 2010 WL 2867966. His primary claim was that his trial attorney assured him he did not face life imprisonment if convicted at trial, and all the statements made in open court about that possibility were only to scare him. If he had known his real sentencing exposure, Petitioner said he would have accepted the State's first plea offer of fifteen years imprisonment. The PCR Court denied this claim, and the Appellate Division affirmed.  Id.

The Appellate Division also addressed Petitioner's claim that his trial counsel's billing of only six hours was *per se* proof of ineffective assistance of counsel. The Appellate Division affirmed the PCR Court's denial of the claim, and noted Petitioner did not explain how the result of his trial would have been different but for counsel's unprofessional errors.  Id.

Petitioner now raises eight grounds for habeas relief: (1) ineffective assistance of trial counsel for incorrectly advising

6

Petitioner of the potential for an extended-term sentence; (2) violation of the Confrontation Clause of the United States Constitution and New Jersey Constitution, because the author of a lab report did not testify at trial, and ineffective assistance of trial counsel for failure to object to such; (3) ineffective assistance of trial counsel for spending only six hours on Petitioner's case; (4) the Post-Conviction Court violated Petitioner's Fourteenth Amendment right to due process by failing to provide Petitioner a full evidentiary hearing on his ineffective assistance of trial counsel claim; (5) "the Court's ruling denying Petitioner's first post-conviction relief violated the defendant's right to effective assistance of counsel as guaranteed by the Sixth Amendment . . ."; (6) the prosecutor violated Petitioner's right to due process under the Fourteenth Amendment by vouching for the credibility of witnesses in summation; (7) the PCR Court abused its discretion in procedurally barring Petitioner's second petition for post-conviction relief; and (8) trial, appellate and first PCR counsel were ineffective for failing to investigate and raise meritorious issues of a constitutional magnitude.[1] (Am. Pet., ECF No. 7, ¶ 12.)

---

[1] In Ground Eight, Petitioner does not describe what meritorious constitutional issues each of his counsel failed to raise. Petitioner, however, states that he exhausted Ground Eight by raising the issues in his second petition for post-conviction relief. (Am. Pet., ECF No. 7 at 17.) In his second petition for post-conviction relief, Petitioner raised his Confrontation Clause

7

II.  DISCUSSION

    A.  Standard of Review

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings
> unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

"Contrary to clearly established Federal law" means the state court

applied a rule that contradicted the governing law set forth in

Supreme Court precedent, or that the state court confronted a set

of facts that were materially indistinguishable from Supreme Court

precedent and arrived at a different result than the Supreme Court.

---

claim under Melendez-Diaz, alleging the failure of his trial
counsel to raise this issue. (Id. at 5-6.) Petitioner also raised
his prosecutorial misconduct claim. (Id.) Petitioner's final
ground for relief in his second post-conviction petition was that
trial counsel failed to bring a motion to suppress evidence found
in a car, and that Petitioner could have demonstrated there was no
search warrant for the car. (Id.) Petitioner did not reassert his
search warrant claim in his habeas petition, as he did his
Confrontation Clause claim and prosecutorial misconduct claim. In
any case, the PCR Court denied all of these claims as time-barred.
(State v. Muse, A-003118-12, N.J. Super. Ct. App. Div., Oct. 15,
2014; ECF No. 21-18 at 2-3.))

8

Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

"When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal Court." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) (citing Wainwright v. Sykes, 433 U.S. 72, 87-88, (1977); Murray v. Carrier, 477 U.S. 478, 485-492 (1986)). State procedural bars, however, may expire by later actions of state courts. Id. "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Id. (citing Harris v. Reed, 489 U.S. 255, 262 (1989)). However, if the state court clearly invokes an adequate and independent state procedural ground to dismiss a claim but makes reference to an alternative holding on the merits, a federal habeas court is not prevented from finding procedural default. Johnson v. Pinchak, 392 F.3d 551, 558 (3d Cir. 2004) (citing Harris, 489 U.S. at 264 n.10).

B.   Analysis

Petitioner alleges ineffective assistance of counsel in Grounds One, Three, Four, Five and Eight of his Amended Habeas Petition. An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

Furthermore, the first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of

hindsight." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003) (citing <u>Bell v. Cone</u>, 535 U.S. 685, 702 (2002); <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382 (1986); <u>Strickland</u>, 466 U.S. at 689; <u>United States v. Cronic</u>, 466 U.S. 648, 656 (1984)).

The second prong of the <u>Strickland</u> test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" <u>Collins v. Sec. of Penn. Dept. of Corr.</u>, 742 F.3d 528, 547 (3d Cir. 2014) (quoting <u>Strickland</u>, 466 U.S. at 694).

The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. <u>Id.</u> at 696. "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." <u>Collins</u>, 742 F.3d at 547 (citing <u>Rolan v. Vaugh</u>, 445 F.3d 671, 682 (3d. Cir. 2006)). A court need not address both components of the ineffective assistance inquiry. <u>Strickland</u>, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." <u>Id.</u>

To show prejudice under <u>Strickland</u> in the context of a rejected plea offer,

11

> a defendant must show that but for the
> ineffective advice of counsel there is a
> reasonable probability that the plea offer
> would have been presented to the court (i.e.,
> that the defendant would have accepted the
> plea and the prosecution would not have
> withdrawn it in light of intervening
> circumstances), that the court would have
> accepted its terms, and that the conviction or
> sentence, or both, under the offer's terms
> would have been less severe than under the
> judgment and sentence that in fact were
> imposed.

Lafler, 132 S. Ct. at 1385.

1.   Ground One

In Ground One of his Amended Petition, Petitioner alleges his trial counsel incorrectly advised him that if he took the case to trial and was convicted, he faced no more than twenty years imprisonment. (Am. Pet., ECF No. 7 at 7.) Petitioner cites the following colloquy in support of his claim that his counsel misunderstood the law regarding imposition of a discretionary extended term of imprisonment:

> DEFENSE: In terms of mitigation, you[r] Honor,
> the State I believe, has filed an extended
> term. I would ask the minimum requirement be
> met in terms of persistent offender before we
> argue further, before the Court would grant
> the extended term application.
>
> COURT: He clearly qualifies for extended term
> sentencing of a discretionary 2C:44-3a.
>
> DEFENSE: Un-your Honor, then I'm correct, then
> that I see three prior convictions, one in
> 2002-actually, all of them in 2002. The first
> prior indictable conviction, a second degree
> crime and third degree crime. The second is a

12

> third degree possession case. And the third
> indictable conviction was a fourth degree
> D.O.R.A. Therefore, it wouldn't apply to a
> persistent offender.
>
> COURT: Why is that? Why wouldn't it apply?
>
> DEFENSE: I believe under persistent offender
> it applies, I though, to first, second, third
> degree offenses. By individuals over 18 years
> of age, at the time of sentencing. At least 21
> years old.
>
> STATE: He only needs two indictable
> convictions to qualify as a persistent
> offender.
>
> COURT: That is my understanding.
>
> STATE: Sentenced on different days.

(Id.)

Petitioner asserts his counsel believed he was not eligible for a discretionary extended term, and that is why counsel told him that the court's statements about him facing life imprisonment were only scare tactics. (Id.) Petitioner claims that it was not until the start of trial on October 25, 2005, when the State's plea offer of fifteen years imprisonment was no longer available, that the Court advised Petitioner he was "persistent offender" eligible. (Id. at 8.) Further, Petitioner asserts the record from August 22, 2005, the date the pretrial memorandum was signed, does not reflect a discussion between Petitioner and the trial court about potential sentencing as a persistent offender. (Id.)

13

Petitioner certified he would have accepted the State's plea offer if he had not been misinformed about his sentencing exposure. (Id.)

On appeal of the denial of his PCR petition, the Appellate Division addressed Petitioner's argument that the above colloquy showed his trial counsel did not understand the statutory threshold requirements for extended-term sentencing. Muse II, 2010 WL 2867966, at *3. The court noted there was another possible interpretation, that counsel fully understood that Petitioner was statutorily eligible based on his two prior second- and third-degree convictions, but believed Petitioner's fourth-degree conviction would not be included in the threshold analysis. Id.

In any event, the Appellate Division affirmed the PCR Court's decision because defendant signed a trial memorandum on August 22, 2005, which explicitly put him on notice that he faced life in prison as a discretionary extended-term offender. Id. The court found it was not plausible that Petitioner would have believed the threat of life imprisonment was only a scare tactic when he signed a written trial memorandum advising him of such. Id.

Additionally, the Appellate Division found that "Defendant was told several times of the consequences of the conviction and the consequences of his failure to accept a plea offer should he be convicted." Id. at *4. The court stated:

> It is quite clear from the colloquy between the court and defendant prior to the commencement of trial, that this defendant was

14

> made plea offers on several occasions and was
> told that, if he rejected those offers, he had
> the possibility of life in prison. He rejected
> plea offers subsequent to the first [offer]
> because he wanted only the first offer that
> was made and none other. The trial judge
> discussed this with defendant before the trial
> began, and in fact, allowed him a recess to
> review the most recent offer with his
> attorney. It is abundantly clear that
> defendant understood his sentencing
> consequences and made a knowing choice to roll
> the dice and proceed to trial. Because that
> choice turned out to be a poor one is not a
> basis for a subsequent finding that
> defendant's trial attorney was ineffective.

Id.

The Appellate Division's factual findings and application of

the Strickland test were unquestionably reasonable. The Appellate

Division reasonably found that the August 22, 2005 pretrial

memorandum, signed by Plaintiff, advised him of his potential

extended-term sentencing exposure, and this rendered implausible

his belief that the threat of life imprisonment by the court was

only a scare tactic.

Importantly, the record of the colloquy between Petitioner

and the trial court at the beginning of trial supports the

Appellate Division's conclusion that Petitioner previously

rejected plea offers knowing he could face life imprisonment if he

went to trial. The trial court stated,

> I have been trying to convince you, almost as
> a favor to you and to me, that this is a case
> based upon the evidence, as I know it to be,
> that you ought to seriously consider resolving

15

by a plea because if you get convicted on the
first degree charge because of your record;
you are looking at life in prison.

. . .

THE DEFENDANT: I could have got a better Plea.

THE COURT: I don't know what he has been
telling you. All I know [is] the State has
been trying to plead this case for a long,
long time. Every time that the offer is made
and every time he's been in court he says you
won't do it. That's fine, you don't have to do
it.

. . .

THE COURT: The other side of the coin is if
you go on trial and you get convicted and they
move for persistent offender status because of
all the things that have gone through, you are
facing life in prison. I mean I don't
understand this failure to capture the
dangerousness of going to trial, but it is
your life, you can do anything you want . . .

(Trial Tr., ECF No. 21-20, at 3-8.) Therefore, even if Petitioner

had a plausible argument that trial counsel erred by not advising

him of his extended-term sentencing exposure, Petitioner cannot

show prejudice, as the court repeatedly made him aware of his

sentencing exposure. This Court will deny Ground One of the Amended

Petition.

### 2.   Ground Three

In Ground Three of the Amended Petition, Petitioner alleged

ineffective assistance of counsel, because trial counsel only

billed 5.75 hours of investigation time and six hours of attorney

16

time on his case. (Am. Pet., ECF No. 7 at 10.) Petitioner contends that counsel rendered *per se* ineffective assistance by working only six hours on his case. (Id.) At a minimum, Petitioner asserts the billing evidence supports his claim that counsel did not adequately investigate the law regarding either his sentencing exposure or on advising him prior to his rejection of the State's plea offer. (Id.)

The Appellate Division agreed with the PCR Court's determination that billing six hours for trial preparation is not *per se* ineffective assistance of counsel. Muse II, 2010 WL 2867966 at *5. The PCR Court doubted that Petitioner's counsel billed for all of the time he worked. Id. The Appellate Division affirmed the PCR Court's decision, because Petitioner had not shown prejudice for insufficient time spent on preparation. Id.

There is no precedent for Petitioner's claim that billing six hours of trial preparation time establishes *per se* ineffective assistance of counsel. See Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000) (rejecting *per se* rule of ineffective assistance of counsel because such a rule is "inconsistent with Strickland's holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'") First, contrary to Petitioner's suggestion that more attorney time might have resulted in his acceptance of a plea offer, the record, as discussed above, supports the finding that Petitioner was advised

17

of his extended-term sentencing exposure but chose to reject the plea offers.

Second, the Appellate Division reasonably found that Petitioner did not show prejudice by counsel's failure to spend more time in trial preparation, because the record indicates the evidence against Petitioner at trial was overwhelming. The evidence against Petitioner at trial included observation of his drug sales by undercover police officers, discovery of drugs in the car Petitioner was dealing out of, discovery of drugs in a stash to which Petitioner led the officers, and Petitioner's confession. Muse I, 2007 WL 561426. The jury did not credit Petitioner's testimony that he never touched any drugs. Id.

Furthermore, the trial transcript reveals defense counsel was adequately prepared to try the case. (Trial Tr., ECF Nos. 21-20 and 21-21.) Hence, there is nothing to indicate the outcome of the trial was likely to have been different if counsel spent more time in preparation. The Court will deny Ground Three of the Amended Petition.

### 3.  Grounds Four, Five, and Eight

In Grounds Four, Five, and Eight of his Amended Petition, respectively, Petitioner contends (1) the PCR Court denied his Fourteenth Amendment right to due process by denying a full evidentiary hearing after Petitioner established a *prima facie* claim of ineffective assistance of counsel; (2) the court's denial

18

of Petitioner's first Petition for post-conviction relief violated
his right to effective assistance of counsel; and (3) the habeas
claims must be remanded for a hearing based on trial, appellate,
and first PCR counsel's ineffective assistance for failing to
investigate and raise meritorious constitutional issues. (Am.
Pet., ECF No. 7, ¶ 12.)

To the extent that Petitioner, in Ground Eight, seeks a
hearing in state court on his ineffective assistance of counsel
claims, this Court cannot review a state PCR Court's determination
under state law of whether to conduct an evidentiary hearing. See
Estelle v. McGuire, 502 U.S. 62, 67 (1991) (habeas relief is not
available for errors of state law); see State v. Jones, 219 N.J.
298, 310-11 (2014) (discussing New Jersey Rule 3:22-10, which
affords state PCR courts discretion to grant an evidentiary
hearing). Therefore, this Court will review Ground Eight as
Petitioner's assertion of cause and prejudice to excuse procedural
default under Grounds Two and Six; that discussion is below.

Based on the discussion above of Petitioner's ineffective
assistance of counsel claims in Grounds One and Three, this Court
finds that Petitioner did not establish a *prima facie* case of
ineffective assistance of counsel in his first PCR proceeding.
Moreover, determination of whether to grant an evidentiary hearing
in a state post-conviction proceeding is a matter of state law.

Therefore, Grounds Four, Five and Eight of the Amended Petition will be denied.

### 4. Grounds Two and Six

Respondent contends Grounds Two and Six of the Amended Petition have been procedurally defaulted, based on an adequate and independent state procedural rule. (Answer to Pet. for Writ of Habeas Corpus ("Answer"), ECF No. 21, at 5-6.) Petitioner relies on claims of ineffective assistance of counsel for cause and prejudice to excuse the procedural defaults.

In general, federal habeas relief may not be granted to a person in custody, pursuant to a judgment of a State court, if the person has not exhausted the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(1)(A). The adequate and independent state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30. The application of the doctrine is based on concerns of respecting a State's interest in enforcing its laws. Id. at 730-31. Federal and State courts are "equally bound to guard and protect rights secured by the Constitution.'" Id. at 731 (quoting Rose v. Lundy, 455 U.S. 509, 515 (1982) (quoting Ex parte Royall, 117 U.S. 241, 251 (1886)).

The exhaustion of state remedies requirement also applies when a state court dismisses a federal claim based on a state

20

procedural default. Id. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Id. at 731-32. Although the claims are technically exhausted because there are no longer any state remedies available, applying the adequate and independent state ground doctrine in such cases protects "the States' interest in correcting their own mistakes." Id. at 732.

If a state court makes a "plain statement" that it is relying on a state procedural bar to deny relief, federal relief is precluded. Harris, 489 U.S. at 261; Johnson, 392 F.3d at 557. There are two exceptions. First, federal habeas review is not barred "if the state law ground [for dismissal of the claim] is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's claims." Johnson, 392 F.3d at 557 (quoting Coleman, 510 U.S. at 740).

Second, only if the decision of the last state court where the petitioner presented his federal claims relied on federal law, should the reviewing court should look at "whether the state court clearly and expressly based its ruling on a state procedural ground." Id. (citing Caswell v. Ryan, 953 F.2d 853, 859-60 (3d Cir. 1992)). "[W]here . . . the last reasoned opinion on the [federal] claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently

disregard that bar and consider the merits." Id. (quoting Ylst, 501 U.S. at 803).

To overcome a procedural default of federal claims in state court, a prisoner must demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. For ineffective assistance of counsel to establish cause to excuse a procedural default, the defendant must show counsel's performance was constitutionally ineffective under the Strickland standard. Murray, 477 U.S. at 488. The cause and prejudice test was first applied to procedural defaults at trial and on direct appeal. Id. at 489-91 (citing Reed v. Ross, 468 U.S. at 10-11.)

In Martinez v. Ryan, the Supreme Court held that inadequate assistance of counsel at initial-review collateral proceedings may also establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. 132 S. Ct. 1309, 1315 (2012). The Court did not hold that ineffective assistance at initial-collateral review proceedings is itself a constitutional violation, however. Id.

In Ground Two, Petitioner alleged his rights under the Confrontation Clauses of the United States and New Jersey Constitutions were violated when a police officer was allowed to testify about the contents of a lab report he did not author. (Am.

22

Pet., ECF No. 7 at 9.) Petitioner raised this issue in a second petition for post-conviction relief based on a claim of ineffective assistance of counsel for failing to raise the issue at trial, and for failing to raise it in his first PCR petition. (State v. Muse, A-003118-12, N.J. Super. Ct. App. Div., Oct. 15, 2014; ECF No. 21-18, at 2-3.) The PCR Court dismissed the petition as untimely under Rule 3:22-12(a)(2), and also denied the claim on the merits. (Id.) The Appellate Division affirmed the PCR Court on October 14, 2014, and the New Jersey Supreme Court denied certification on April 2, 2015. (Id.; Am. Pet., ECF No. 7, at 10.)

In Ground Six of the Amended Petition, Petitioner argues the prosecutor violated his Fourteenth Amendment right to due process and a fair trial by vouching for the credibility of the State's witnesses and impugning Petitioner's credibility in summation. (Am. Pet., ECF No. 7, at 14.) Petitioner stated the prosecutor compared him to Pinocchio with his nose growing, told the jury Petitioner had a lot at stake and motive to lie, and that Petitioner had an agenda to deceive the jury and serve his own interests. (Id.) The prosecutor also stated, "Do you believe that a four-time convicted felon, who is the only one who has anything to gain or lose here, is going to tell you the truth as opposed to the police officers?" (Id.) The prosecutor further stated that the police officers "testified honestly." (Id.)

Petitioner first raised this claim in his second petition for post-conviction relief. (Am. Pet., ECF No. 7 at 14.) The PCR Court found the claim untimely under Rule 3:22-12(a)(2), and found it to be without merit, and the Appellate Division affirmed. (State v. Muse, A-003118-12, N.J. Super. Ct. App. Div., Oct. 15, 2014; ECF No. 21-18, at 2-3.)

The Court finds that Petitioner has procedurally defaulted on Grounds Two and Six of the Amended Petition.  The Appellate Division plainly stated that Petitioner's second petition for post-conviction relief was untimely under New Jersey Rule 3:22-12(a)(2), although it also denied the petition on the merits without discussion. (Id.)  The New Jersey post-conviction timeliness rule is an adequate and independent state ground generally applied by New Jersey courts to refuse claims on procedural grounds. Johnson, 392 F.3d at 559-62 (finding that New Jersey Rule 3:22-12 is an adequate and independent state ground establishing procedural default.) Therefore, unless Petitioner shows cause and prejudice to excuse the procedural default, or actual innocence, federal habeas review of the claim is barred. Id. at 563 (citing Wainwright, 433 U.S. at 90-91; Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996)).

a. Cause and Prejudice for Default of Ground Two

Petitioner relies on claims of ineffective assistance of counsel for cause and prejudice to excuse the procedural default.

For Ground Two,[2] Petitioner argues his PCR counsel was ineffective for failing to raise his Confrontation Clause claim, because the court admitted a lab report into evidence without testimony from the author.

In 2009, the Supreme Court held that the affidavits of lab analysts, in which the analysts stated that the substance found in a defendant's possession was cocaine, were "the precise testimony the analysts would be expected to provide if called at trial." Melendez-Diaz v. Mass., 557 U.S. 305, 311 (2009). Therefore, these affidavits were testimonial statements, and the analysts were witnesses for purposes of the Sixth Amendment. Id. Under this rule, a petitioner is entitled to confront the analysts at trial, absent a showing that (1) they were not available to testify, and (2) the petitioner had a prior opportunity to cross-examine them. Id. Melendez-Diaz marked a change in the law. See State v. Wilson, 442 N.J. Super. 224, 240-43 (N.J. Super. Ct. App. Div. 2015) (discussing change in Confrontation Clause analysis after Crawford v. Washington, 541 U.S. 36 (2004), Melendez-Diaz, and other recent Supreme Court cases.)

---

[2] Petitioner also alleged violation of the New Jersey Constitution in Ground Two. There is no habeas remedy for a State court's error involving State law. See 28 U.S.C. § 2254(a). Therefore, this Court will address Petitioner's claim only under the United States Constitution.

The Supreme Court decided Melendez-Diaz in 2009. Petitioner's trial and direct appeal were completed in 2007. He filed his first PCR petition on December 28, 2007, and it was denied on August 25, 2008. Therefore, Petitioner's trial, appellate, and first PCR counsel did not have the benefit of the Supreme Court's decision on the Confrontation Clause issue Petitioner raised in his second PCR petition.

"'Only in a rare case can an attorney's performance be considered unreasonable under prevailing professional standards when she does not make an [argument] which could not be sustained on the basis of the existing law as there is no general duty on the part of defense counsel to anticipate changes in the law.'" United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005) (quoting Gov't of the V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989); Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996). Melendez-Diaz is not the rare case where counsel should have foreseen a change in the law. Therefore, counsel was not ineffective for failing to raise the claim.

Petitioner did not file his second petition for post-conviction relief, including the Melendez-Diaz claim, until September 20, 2012, and the PCR Court rejected the claim as untimely. (ECF No. 21-18 at 2-3.) This Court cannot review the PCR Court's timeliness finding, because timeliness of a PCR petition qualifies as a state court's determination of state law. See State

26

v. Merola, 365 N.J. Super. 203 (N.J. Super. Ct. App. Div. 2002) (discussing nature of New Jersey procedural rules for post-conviction relief).

Even if trial, appellate, or first PCR counsel should have raised the Confrontation Clause claim, Petitioner could not show prejudice for their failures, because Petitioner confessed to possessing cocaine and heroin, although he denied such at trial. Kelly testified that Petitioner stated he was waiting for someone for the purpose of selling cocaine for $5,000, at the location where police arrested him. (Trial Tr., ECF No. 21-20 at 88-89.) The cocaine came from two Ziploc bags under the armrest in the Grand Marquis. (Id.) While Petitioner was waiting at this location, he saw some guys who sold drugs for him and started to pass out bundles of heroin from the sleeve inside the car. (Id.)

Mikros testified that Petitioner told him "[y]ou are going to find it anyway, there's 190 grams of cocaine in the car. The key is by the front passenger tire, underneath the front passenger tire." (Id. at 136-37.) Admission of the lab report confirming that the substances in the car were cocaine and heroin, without confrontation of the author of the report, did not prejudice the result of the proceeding because Petitioner confessed to the nature of the substances. See Adams v. United States, 570 F. Appx. 126, 129 (3d Cir. 2014) (finding that Confrontation Clause claims are subject to harmless error review, and error is harmless if the

verdict rendered was "surely unattributable to the error" (quotation omitted)). Even though Petitioner denied making a confession to police when at trial, Petitioner asserted that the substances were not his and did not contest the nature of the substances that were found. (Trial Tr., ECF No. 21-21 at 39-103.) Therefore, Petitioner has not shown cause and prejudice to excuse his procedural default of this claim. The Court will dismiss Ground Two of the Amended Petition.

　　　　b.　Cause and Prejudice for Default of Ground Six

　　　Petitioner contends his trial counsel should have objected to the prosecutor's summation at trial, and appellate counsel should have raised the issue on appeal. As discussed above, Petitioner must meet the Strickland standard to excuse procedural default based on ineffective assistance of counsel.

　　　The Supreme Court held that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Thus, it is difficult but not impossible to demonstrate that counsel was incompetent for failure to raise a particular claim that was stronger than the claims presented. Id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). On Petitioner's direct appeal, counsel raised claims of faulty jury instructions, denial

28

of Petitioner's right to a fair trial by admission of evidence of his prior convictions, and sentencing errors.

Turning to the strength of the prosecutorial misconduct claim, when a petitioner claims a prosecutor's remark at trial "so infected the trial with unfairness as to make the resulting conviction a denial of due process," the reviewing court must examine the comments in the light of the entire proceedings. Fahy v. Horn, 516 F.3d 169, 203-4 (3d Cir. 2008) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). After a defendant testifies on his own behalf, "a prosecutor may attack his credibility to the same extent as any other witness." Id. at 203 (citing Fitzpatrick v. United States, 178 U.S. 304, 315 (1900)). Yet a prosecutor may not express his personal belief in the credibility of a witness or the guilt of a defendant. Id. (citing Berger v. United States, 295 U.S. 78, 88 (1935)). It is also unprofessional conduct for a prosecutor to argue on the basis of facts outside the record, "unless such facts are matters of common knowledge based on ordinary human experience . . ." United States v. Lefevre, 483 F.2d 477, 479 (3d Cir. 1973) (quoting and adopting Standard 5.9 of the ABA Prosecution Standards).

Here, the prosecutor did not explicitly declare her personal belief in the guilt of the defendant. The Pinocchio comments were as follows:

29

> What I have [here] is the Pinocchio-like
> effect and that is when you tell lie after lie
> after lie after lie, at some point you get a
> little tangled up and you start having to ask
> questions like, before I answer your question,
> Ms. [Prosecutor,] I need to know where are you
> going with it because I can't honestly say yes
> or no until I know what it is going to result
> by the questions down the road. You see his
> nose growing and growing and growing until the
> point, Pinocchio, there's a bird nest and
> branches on the end. He lied and lied and lied
> and got so tangled up in lies that he couldn't
> even answer a yes or no question because he
> had to figure out how it will fit in with his
> agenda. This case boils down to one question,
> who do you believe? . . .

(Trial Tr., ECF No. 21-21, at 114-15.)

The point of the prosecutor was to suggest to the jury that Petitioner's reaction to cross-examination could be explained by his fear of being trapped in a lie. This was not improper because after a defendant testifies, the prosecutor may attack his credibility in the same manner as any other witness.

The prosecutor also suggested Petitioner had a motive to lie, and stated, "he is the only one with anything at stake here," and "[t]hat man testified to you with an agenda to deceive you to serve his own best interest." (Id. at 116.) These comments by the prosecutor were in response to Petitioner's testimony that events did not happen in the manner the police officers described in their testimony. Furthermore, the prosecutor stated, "[d]oes he have a motive to lie to you that it didn't happen the way the police officer said in this case? Of course he does." This argument was

30

invited by Petitioner's testimony that the police lied. (Trial Tr., ECF No. 21-21, at 39-103.)

Finally, the prosecutor argued, "[h]e lied to you and he compounded lies as his testimony went on." (Trial Tr., ECF No. 21-21, at 123.) If a prosecutor describes a defendant's statements as lies during argument to the jury, "courts must determine whether such statements exceed the bounds of acceptable advocacy." United States v. Vaghari, 500 F. App'x 139, 144 (3d Cir. 2012). "[It] is not improper for a prosecutor to refer to a defendant's testimony as 'lies' so long as this characterization is a fair comment on the evidence adduced at trial and not an inflammatory expression of a prosecutor's personal belief." Id. (quoting United States v. Reilly, 33 F.3d 1396, 1421 (3d Cir. 1994) (citation and internal quotations omitted)).

The prosecutor recited evidence in the record in support of her statement about Petitioner compounding lies in his testimony. First, she described the State's evidence. (Trial Tr., ECF No. 21-21, at 117-22.) The, she discussed Petitioner's testimony.

> Now, this is, of course, dramatically different from what Mr. Muse told you on the stand and I'd like to talk to you now a little bit about that now.
>
> . . .
>
> At first [Petitioner said] the police were telling the truth about some things but then he realized he had to elaborate just to make people look bad because the worse he can make

> Officer Mikros look, the worsen he can make me
> look, the less likely you are to listen to
> these people.
>
> I found it interesting - - and I hope that you
> did too, that the man who was so suspicious of
> the police conduct, so experienced in the
> criminal justice system, didn't bother to look
> at what he was signing, just signed it. We are
> not talking about 50 pages of fine print. You
> saw that page, large print, handwritten. Mr.
> Muse didn't read that before he signed it but
> was so suspicious of the police that he
> wouldn't eat pizza [provided by the police]
> because he read something into the cheese on
> the pizza meaning he is a rat.

(Trial Tr., ECF No. 21-21, at 122-23.) Under these circumstances,

the prosecutor's use of the words "lies" and "liar" was fair, based

on the evidence adduced at trial.

As far as the prosecutor vouching for the credibility of the

State's witnesses, the prosecutor said:

> If the police were out to get this man, as he
> told you they are, why wouldn't the police -
> - if they are liars like that, why wouldn't
> they say they saw that it was drugs, that he
> held out and they can see something small and
> white? They could have made this case stronger
> if they were lying. I suggest to you they
> testified honestly when they said I couldn't
> see what it was he was handing people. It was
> quickly. I didn't see money except in one
> incident.
>
>         . . .

(Trial Tr., ECF No. 21-21, at 117-18.) The prosecutor also said,

> The first time you heard he is a four-time
> convicted felon. You heard what the prior
> convictions are for. And what the Judge will
> instruct you to use that for is to assess his

32

> credibility. Do you believe that a four-time
> convicted felon, who is the only one who has
> anything to gain or lose here, is going to
> tell you the truth as opposed to the police
> officers?
>
> . . .
>
> When you use the skills you've developed over
> the course of your life, I would suggest to
> you that the only result you'll come up with
> is that John Muse lied, lied, lied to you and
> that the facts that the police presented when
> they testified is, in fact, the truth.

(Id. at 122, 128.)

Two criteria must be met to establish a prosecutor vouched for the credibility of a witness: (1) the prosecutor must assure the jury that the testimony of the witness is credible; and (2) the prosecutor's assurance must be based on personal knowledge or information not contained in the record. United States v. Walker, 155 F.3d 180, 187 (3d Cir. 1998). "[A] prosecutor may urge that a witness is trustworthy by arguing from the record evidence; vouching only occurs where the prosecutor implicitly refers to information outside the record." United States v. Rivas, 493 F.3d 131, 137 (3d Cir. 2007) (citing Walker, 155 F.3d at 187). Additionally, rhetorical questions about "who would you believe" or "what motivation would they have to lie" do not qualify as vouching because it does not maintain the credibility of witnesses by referring to information outside the record, nor does it contain

a personal assurance of veracity. Vaghari, 500 F. App'x at 145 (citing Walker, 155 F.3d at 188.)

The prosecutor did not personally assure the jurors of the veracity of the State's witnesses when she said the only conclusion the jurors could reach, when they used the skills developed in their lifetimes to assess the witnesses' credibility, was that Petitioner lied and the police told the truth, nor did the prosecutor ever suggest she had knowledge from outside the record about the police officers' credibility.

The prosecutor's statements were permissible, but even if the prosecutor crossed the line, her summation did not fatally infect the fairness of the trial. The evidence against Petitioner was overwhelming, and his testimony that he never touched any drugs was readily impeached by his prior drug convictions. Therefore, neither trial nor appellate counsel committed an objectively unreasonable error by not bringing a claim of prosecutorial misconduct on Petitioner's behalf. See Berryman v. Morton, 100 F.3d 1089, 1094 (3rd Cir. 1996) (habeas courts must presume that counsel's conduct falls within a wide range of professional assistance).

Petitioner has failed to establish that counsel's failure to raise his prosecutorial misconduct claim is cause to excuse his procedural default of this claim. The Court will dismiss Ground Six of the Amended Petition as procedurally defaulted.

### 5.   Ground Seven

In Ground Seven of the Amended Petition, Petitioner claims the PCR Court abused its discretion by procedurally barring his second petition for post-conviction relief. Petitioner asserts he demonstrated excusable neglect for his untimeliness, and the PCR Court should have addressed his claims.

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). This Court cannot review the PCR Court's determination of the state procedural law governing excusable neglect. See Harris, 489 U.S. at 265 (rejecting proposed rule that would require federal habeas courts to "undertake an extensive analysis of state law to determine whether a procedural bar was potentially applicable to the particular case.") Therefore, the Court will dismiss Ground Seven of the Amended Petition.

### III. CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. See Third Circuit Local Appellate Rule 22.2. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of denial of a constitutional right, and this Court will not issue a certification of appealability.

IV.   <u>CONCLUSION</u>

For the reasons discussed above, the Court will dismiss Grounds Two and Six of the Amended Petition as procedurally defaulted, and will deny Grounds One, Three, Four, Five, and Eight of the Amended Petition on the merits of the ineffective assistance claims, and otherwise dismiss the claims to the extent that they challenge state law determinations by the state courts. Ground Seven will also be dismissed because there is no habeas relief available for alleged errors of state law. An appropriate Order will follow.

Dated: _____ , 2016

_____
STANLEY R. CHESLER
United States District Judge